IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERESA ANN JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2213-M |
| | § | |
| OCWEN LOAN SERVICING LLC, | § | |
| AND WELLS FARGO BANK, | § | |
| NATIONAL ASSOCIATION, AS | § | |
| TRUSTEE FOR PARK PLACE | § | |
| SECURITIES, INC., ASSET-BACKED | § | |
| PASS-THROUGH CERTIFICATES, | § | |
| SERIES 2005-WLLI, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Defendants Ocwen Loan Servicing LLC ("Ocwen") and Wells Fargo Bank,
National Association ("Wells Fargo"), as Trustee for Park Place Securities, Inc., Asset-
Backed Pass-Through Certificates, Series 2005-WLLI (together, "Defendants") filed a
Motion for Summary Judgment [Dkt. No. 16] (the "MSJ"). Chief Judge Barbara M. G.
Lynn has referred the MSJ to the undersigned United States magistrate judge for
recommendation. *See* Dkt. No. 31.

Defendant Teresa Ann Johnson filed a response to the Motion for Summary
Judgment, *see* Dkt. No. 24, and Defendants filed their reply, *see* Dkt. No. 28.
Defendants also filed their Objections to, and Motion to Strike, Plaintiff's Evidence in
Support of her Opposition to Defendants' Motion for Summary Judgment, *see* Dkt. No.
29, and Ms. Johnson filed a response, *see* Dkt. No. 30. Defendants have not filed a

reply, and their time to do so has expired.

The undersigned now concludes that each of Defendants' Objections to, and Motion to Strike, Plaintiff's Evidence in Support of her Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 29] should be overruled and that Defendants' Motion for Summary Judgment [Dkt. No. 16] should be granted in part.

## Background

Defendants move for summary judgment on all of Ms. Johnson's claims against them under the Real Estate Settlement Procedures Act ("RESPA") and the Texas Debt Collection Act ("TDCA").

To determine the undisputed facts in this case, the undersigned has considered the evidence submitted by the parties to the extent that it is proper for consideration on this motion, as discussed below. These documents establish the following undisputed facts.

Ms. Johnson owns a home located at 9611 Private Road 3826, Quinlan, Texas 75474 (the "Property").

On December 9, 2004, Ms. Johnson obtained a $160,000 loan (the "Loan") by signing a Texas Home Equity Adjustable Rate Note (the "Note") and by, together with her husband, Robert Lukowicz, signing a Texas Home Equity Security Interest (First Lien) ("Security Interest"), which granted her lender a lien on the Property.

Ocwen became the servicer of the Loan on November 1, 2011.

By February 2014, Ms. Johnson was seven months behind on her payments on the Loan.

In December 2014, Ms. Johnson's husband, Mr. Lukowicz, lost his job. Ms. Johnson was still seven months behind on her loan payments.

Ms. Johnson made loan payments in January 2015 through July 2015 but did not bring her loan payments up to date, and she remained seven months behind.

In July 2015, Ms. Johnson requested, and Ocwen provided, a loan modification application.

In correspondence dated July 24, 2015, Ocwen notified Ms. Johnson of her default. The letter indicated that failure to bring her account current could result in Ocwen's election to foreclose on the Property and that, on acceleration of the Loan, Ms. Johnson's total obligation would immediately become due.

Ms. Johnson attempted to make a loan payment for August 2015, but Ocwen did not accept Ms. Johnson's attempted payment.

On September 16, 2015, Ocwen sent Ms. Johnson a letter indicating that it had initiated foreclosure on the Property but that Ms. Johnson could avoid foreclosure if she completed and returned to Ocwen a loan modification application.

Ms. Johnson's September Mortgage Account Statement indicated an accelerated amount due of $154,233.33 and a reinstatement amount due of $15,969.92.

Ms. Johnson's subsequent Mortgage Account Statements also provided an accelerated amount due and a reinstatement amount due, both amounts reflecting added fees and charges accrued since previous statements.

On December 16, 2015, Ocwen sent Ms. Johnson a Delinquency Notice indicating that Ms. Johnson was behind on her mortgage payments.

Between August 2015 and February 2016, Ms. Johnson submitted, on numerous occasions, various loan modification application documents to Ocwen. Each time, Ocwen responded by indicating that Ms. Johnson's application remained incomplete and by requesting additional materials.

On March 31, 2016, Plaintiff faxed additional application documents to Ocwen.

In a letter dated April 4, 2016, Ocwen acknowledged receipt of Ms. Johnson's March 31 correspondence.

In a letter dated April 5, 2016, Ocwen notified Ms. Johnson that her Application remained incomplete due to three missing documents: (1) Borrower Two's two most recent consecutive pay stubs with year-to-date income, for each job he maintained; (2) a signed Hardship Affidavit, because the one previously received was not signed; and (3) a 4506-T form, because the one previously received was not legible.

The April 5 letter provided a April 22, 2016 deadline for Ms. Johnson to submit the three missing documents.

On April 12, 2016, Ms. Johnson faxed Ocwen (1) a letter indicating that Mr. Lukowicz was employed by NUCOR building systems; (2) Mr. Lukowicz's three most recent pay stubs from NUCOR building systems; (3) bank statements for Mr. Lukowicz spanning December 3, 2015, through April 3, 2016; (4) bank statements for QMHV Inc. spanning January 1, 2016, through March 31, 2016; (5) a 4506-T form signed by both Ms. Johnson and Mr. Lukowicz; and (6) a Hardship Affidavit, signed on each page by Ms. Johnson and Mr. Lukowicz.

On April 19, 2016, Ocwen informed Ms. Johnson that further documentation was

necessary and that the same three documents mentioned in its April 5 letter remained outstanding for the same reasons as before: (1) Borrower Two's paystubs, because they had not yet been received; (2) a signed Hardship Affidavit, because the one received was not signed; and (3) a 4506-T form, because the one previously received was not legible.

The April 19 letter provided a May 6, 2016 deadline for Ms. Johnson to submit the requested materials.

On April 22, 2016, Ocwen filed a Petition in the 196th District Court of Hunt County, Texas, seeking an expedited Order for Foreclosure.

In a letter dated May 2, 2016, Ocwen informed Ms. Johnson that her application remained incomplete because Borrower Two's paystubs had still not been received.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of

a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005);

*Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "[a]fter the nonmovant has been given an opportunity to raise a genuine

factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (citation omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2017 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment

as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCreditCorp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

I.     <u>The Court can consider the Declaration of Teresa Ann Johnson.</u>

Ms. Johnson has proffered the Declaration of Teresa Ann Johnson to support her Opposition to Defendants' Motion for Summary Judgment.

In their Objections to, and Motion to Strike, Plaintiff's Evidence, Defendants contend that the Court cannot consider certain statements in Ms. Johnson's Declaration.

For the reasons explained below, the undersigned disagrees.

### A.     **Paragraph 5 is admissible nonhearsay and competent summary judgment evidence.**

Paragraph 5 of Ms. Johnson's Declaration provides: "When I asked Ocwen's representative why the payment was denied, I was informed that I had not made a payment since January 2015." Dkt. No 26-1 at ¶ 5. Defendants argue that the Court cannot consider Paragraph 5 because it is inadmissable hearsay. The undersigned concludes that Paragraph 5 is admissible as a nonhearsay admission by a party opponent.

The Federal Rules of Evidence define hearsay as an out-of-court statement offered for the truth of the matter asserted. *See* FED. R. EVID. 801(c). But under the

Federal Rules, certain statements that satisfy the definition of hearsay are nonetheless nonhearsay under Rule 801(d). *See* FED. R. EVID. 801(d). Rule 801(d)(2) provides that a statement is not hearsay if "[t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." FED. R. EVID. 801(d)(2).

Here, the requirements of Rule 801(d)(2) are satisfied. The statement Ms. Johnson is offering was made by Ocwen's representative when Ms. Johnson attempted to make a mortgage payment over the phone, and the statement concerned Ms. Johnson's previous payments to Ocwen. *See* Dkt. No. 26-1 ¶ 5. Thus, the Ocwen representative's statement is a nonhearsay admission by a party opponent and may be properly considered as admissible summary judgment evidence.

B.    **Paragraph 10 is competent summary judgment evidence**.

Paragraph 10 of Ms. Johnson's Declaration provides: "I was obviously confused because Ocwen was sending me wildly conflicting amounts that were supposedly due on the loan." Dkt. No. 26-1 ¶ 10. Defendants argue that the Court cannot consider Paragraph 10 because it is a "conclusory, argumentative, self-serving statement unsupported by underlying facts." Dkt No. 29 at 2. The undersigned disagrees.

In deciding a motion for summary judgment, a court may not exclude evidence solely because the proffered evidence is self-serving. *See C.R. Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011). "An affidavit

based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *Id.* (holding that the district court erred in disregarding affidavits on a motion for summary judgment, because, "[a]lthough arguably 'self-serving,' the affidavits are not wholly conclusory, are based on personal knowledge, and create a fact issue"); *see also U.S. Risk Ins. Grp., Inc. v. U.S. Risk Mgmt., LLC*, No. 3:11-cv-2843-M-BN, 2013 WL 4504754, at *9 (N.D. Tex., 2013).

Here, Ms. Johnson's statement speaks to her personal knowledge after receiving what appeared to her as conflicting loan statements, which she further details in her declaration, from Ocwen. Even though Ms. Johnson's statement is self-serving – as are most declarations, affidavits, and testimony – it meets the admissibility requirements and is detailed, specific, and based on personal knowledge. Therefore, it is competent summary judgment evidence.

C.  **Paragraph 12 is competent summary judgment evidence.**

Paragraph 12 of Ms. Johnson's Declaration states: "Three (3) days later, despite submitting the complete loss mitigation application(s), Ocwen sent me foreclosure documents." Defendants argue that the Court cannot consider Paragraph 12 because it is a conclusory statement unsupported by underlying facts. The undersigned disagrees.

It is not clear what Defendants mean by "unsupported by underlying facts" in the context of determining competent summary judgment evidence. The statements are either competent summary judgment evidence that are more than a scintilla or not.

And, as explained with respect to Paragraph 10 above, affidavits that are not wholly conclusory, are based on personal knowledge, and create a fact issue are admissible summary judgment evidence. And here, by indicating that, after she sent to Ocwen documents that Ocwen had indicated would complete her loss mitigation application, Ocwen sent foreclosure documents, Ms. Johnson's statement satisfies those requirements.

D.     **Paragraph 13 is competent summary judgment evidence.**

Paragraph 13 of Ms. Johnson's Declaration states: "Then, on April 19, 2016, Ocwen sent me a letter stating that it did not have the same three documents that I had sent in on April 12, 2016. Ocwen provided a May 6, 2016 deadline for me to submit the purportedly missing paperwork." Dkt. No. 26-1 ¶ 13. Defendants object to the Court's consideration of Paragraph 13 on the grounds that it is "argumentative, and the referenced letter is the best evidence of Ocwen's communication and speaks for itself." Dkt. No. 29 at 2. The undersigned disagrees.

First, Ms. Johnson's statements in Paragraph 13 are not argumentative. Ms. Johnson's Appendix to her response provides a fax confirmation dated April 12, 2016, indicating that she faxed Ocwen three items of information on that date. *See* Dkt. No. 26-5. The Appendix provides a letter from Ocwen dated April 19, 2016, indicating that the three items Ms. Johnson previously faxed were incomplete, illegible, or missing. *See* Dkt. No. 26-9. Ms. Johnson's Paragraph 13 summary of the fax confirmation and letter is not improperly argumentative, and the Defendants' argumentative objection should be overruled.

Second, Paragraph 13 does not run afoul of the best evidence rule. Federal Rule of Evidence 1002 requires that a litigant produce "[a]n original writing, recording, or photograph ... in order to prove its content." FED. R. EVID. 1002. And under the Federal Rules, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." FED. R. EVID. 1003.

Here, Ms. Johnson submitted the April 19, 2016 letter as an exhibit to her response. Defendants have raised no question about its authenticity. Defendants' best evidence objection to Ms. Johnson's statements in Paragraph 13 should be overruled.

E.    **Paragraph 14 is competent summary judgment evidence.**

Paragraph 14 of Ms. Johnson's Declaration provides in part:

> I have suffered severe mental anguish and emotional distress .... heightened stress levels, sleepless nights, hair loss, headaches, anxiety, major depression, irritation because of no credit ability, weight loss, loss of appetite, irritable bowel syndrome, migraine headaches, fatigue, feelings of helplessness, feelings of hopelessness, unusual fighting with my spouse over Ocwen, flare-ups of my Fibromyalgia and inability to concentrate during that time. I became consumed with worry, frustration and grief. I experienced periods of exhaustion. I was embarrassed, overwhelmed and had suicidal thoughts.

Dkt. No. 26-1 ¶ 14. Defendants argue that the Court cannot consider this excerpt because it is "wholly conclusory, self-serving, assumes facts not in evidence (particularly with regard to purported loss of 'credit ability') and wholly violates [Federal Rule of Evidence] 702, insofar as Plaintiff's description is the proper subject of medical diagnoses about which she is unqualified to testify." Dkt. No. 29 at 3. Defendants also argue that this portion of Ms. Johnson's Declaration is "[s]peculative

insofar as [it] ascribes causation of any of the ailments described as having been caused by Ocwen." *Id.* The undersigned disagrees.

First, as described above, self-serving affidavits are admissible if they are not wholly conclusory, are based on personal knowledge, and create a fact issue. Here, Ms. Johnson's statement is a detailed, specific recount of her personal experiences. Paragraph 14 thus meet the requirements for summary judgment evidence.

Second, Ms. Johnson's statements about her mental state and her perceived reasons for it – that she has suffered "irritation because of no credit ability" – does not impermissibly assume facts not in evidence.

Third, Ms. Johnson's statements as to her physical conditions are not improper. Under Federal Rule of Evidence 701, lay witnesses may testify in the form of an opinion that is rationally based on the witness's perception. *See* FED. R. EVID. 701. Here, Ms. Johnson's statement centers on her own physical experience as a lay person. She describes the effects that she personally has suffered, including headaches, sleepless nights, and embarrassment. Even Ms. Johnson's account of her irritable bowel syndrome and feelings of depression are rationally based on her perception and physical experiences – experiences that Ms. Johnson is certainly qualified to describe without expert qualifications. Any issues Defendants have with the credibility of Ms. Johnson's self-assessment in Paragraph 14 go to the weight, and not the admissibility, of her declaration.

II.   The Court can consider Kevin L. Flannigan's Deposition Testimony.

Defendants object to Ms. Johnson's use of part of the deposition testimony of

Kevin L. Flannigan, Defendants' corporate representative. The relevant portion of the deposition testimony reads:

> Q. So given Exhibit 4 this would make the application for the loan modification complete, would it not? MR. ANTHONY: Object to the form of the question. You may answer.
> A. Well, it would depend when – you know, at the time when Ocwen received this additional information the representatives at Ocwen would review the information to determine if in fact the information that's included in these documents is accurate and complete, if not then one of the Ocwen representatives would advise the borrower or borrowers of what additional information would be required.

Dkt No. 26-6, at 5, 23:21-24:9. Defendants object to the Court's consideration of this excerpt, arguing that the question calls for a legal conclusion. *See* Dkt. No. 29 at 3. Ms. Johnson, in response, maintains that Defendants' objection should be overruled because Defendants (1) waived their objection, *see* Dkt. No. 30 ¶ 20, and (2) even if Defendants did not waive the objection, the question did not call for a pure legal conclusion. Regardless of whether Defendants waived their objection, the undersigned agrees with Ms. Johnson's second argument and concludes that the deposition testimony is admissible.

Ms. Johnson makes multiple RESPA claims under 12 C.F.R. § 1024.41. And the very definition of "complete loss mitigation packet" under Section 1024.41 depends on the what the servicer itself considers complete. *See* 12 C.F.R. § 1024.41(b)(1) ("A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires ....").

Here, the question objected to, although touching an issue of law, centers on facts specific to this case and what documents Defendants required for Ms. Johnson's

application to become complete. Mr. Flannigan testified at his deposition that an April 5, 2016 letter from Ocwen to Ms. Johnson indicated the three reasons that Ms. Johnson's loan modification application was incomplete: it was missing pay stubs; contained an unsigned Hardship Affidavit; and contained an illegible 4506-T form, which Ocwen asked Ms. Johnson to resend. Dkt. No. 26-6 at 4-5, 21:24-22:13. The question at issue concerns whether Ms. Johnson's allegedly providing the third of those items – after supposedly providing the other two – would make her loan modification application complete by Ocwen's standards, as suggested in the April 5 letter. And, if Defendants can identify what makes an application incomplete, they can identify what would make one complete. Defendants' objection to the Flannigan deposition excerpt should be overruled.

III.  The Court should grant Defendants' MSJ on Ms. Johnson's RESPA claims.

Ms. Johnson asserts claims under 12 C.F.R. §§ 1024.41(d) and (g), which RESPA makes actionable. *See* 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. [§] 2605(f)).").

Section 1024.41(d) provides that

> [i]f a borrower's complete loss mitigation application is denied for any trial or permanent loan modification option available to the borrower pursuant to paragraph (c) of this section, a servicer shall state in the notice sent to the borrower pursuant to paragraph (c)(1)(ii) of this section the specific reason or reasons for the servicer's determination for each such trial or permanent loan modification option and, if applicable, that the borrower was not evaluated on other criteria.

12 C.F.R. § 1024.41(d).

Section 1024.41(g) provides that

> [i]f a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g).

To make a claim under Section 1024.41(g) and (d), a borrower must first submit a complete loss mitigation application. *See id.* Under Section 1024.41, "[a] complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1).

Ms. Johnson argues that Defendants violated Section 1024.41(g) by seeking an order of foreclosure after Ms. Johnson submitted her loan modification application. *See* Dkt. No. 1-5 ¶ 31. Ms. Johnson claims that Defendants violated Section 1024.41(d) by failing to provide the required notice that her application was denied. *See id.* ¶ 32.

Defendants maintain that they are entitled to summary judgment on both Ms.

Johnson's Section 1024.41(g) and Section 1024.41(d) claims for the same reason: because Ms. Johnson has not presented evidence that she (1) submitted a complete loss mitigation application, *see* Dkt. No. 17 ¶¶ 26, 28, or (2) suffered damages as a result of Defendants' alleged RESPA violations, *see id.* ¶¶ 27, 28.

The undersigned disagrees with Defendants and concludes that Defendants are not entitled to summary judgment on Ms. Johnson's RESPA claims because a question of material fact exists as to whether Ms. Johnson (1) submitted a complete loss mitigation application and (2) suffered damages as a result of Defendants' alleged RESPA violations.

First, Defendants maintain that they are entitled to summary judgment on Ms. Johnson's RESPA claims because Ms. Johnson has presented no evidence that she submitted a complete loss mitigation application as required by Sections 1024.41(g) and (d).

But the competent summary judgment evidence suggests otherwise. It is undisputed that, on April 5, 2016, Ocwen sent Ms. Johnson a letter listing the required documents that were missing from her loan modification application: (1) Borrower Two's two most recent consecutive pay stubs with year-to-date income, for each job maintained; (2) a signed Hardship Affidavit, because the one previously received was not signed; and (3) a 4506-T form, because the one previously received was not legible. In the letter, Ocwen asked that Ms. Johnson provide these documents as quickly as possible, and by no later than April 22, 2016, so that Ocwen could evaluate all available loss mitigation options.

And the evidence indicates that, on April 12, 2016, Ms. Johnson submitted (1) a letter indicating that Mr. Lukowicz was employed by NUCOR building systems; (2) Mr. Lukowicz's three most recent pay stubs from NUCOR building systems; (3) bank statements for Mr. Lukowicz spanning December 3, 2015, through April 3, 2016; (4) bank statements for QMHV Inc spanning January 1, 2016, through March 31, 2016; (5) a 4506-T form signed by both Ms. Johnson and Mr. Lukowicz; and (6) a Hardship Affidavit, signed on each page by Ms. Johnson and Mr. Lukowicz.

Still, Defendants argue in their reply that Ms. Johnson's application remained incomplete, even after April 12, because Ms. Johnson failed to submit her own paystubs and because she has presented no evidence to the contrary. *See* Dkt. No. 28 at 5-6. But Ocwen's April 5 correspondence makes no mention of Ms. Johnson's own paystubs, specifically, just those belonging to Borrower Two.

And Defendants do not overtly dispute that Mr. Lukowicz was Borrower Two. The Note was signed only by Ms. Johnson. The Security Interest was signed by Ms. Johnson, on the first line, and Mr. Lukowicz, on the second. And, when asked in his deposition about the identity of Borrower Two, Defendants' corporate representative responded:

> I'm not sure if there was an additional person that was included in the borrower's finances when she was applying for the modification. She may have listed someone else as a person who would be assister her but without the documentation in front of me I don't know that for sure.

Dkt. No. 26-6 at 5 of 7, 21:16-21.

Yet Defendants contend that Ms. Johnson was still required to provide, in

addition to Mr. Lukowicz's paystubs, her own updated paystubs. *See* Dkt. No. 28 at 5. This argument is unsupported by the evidence Defendants themselves presented in support of their MSJ. In its April 19 letter to Ms. Johnson requesting the Borrower Two paystubs, 4506-T form, and Hardship Affidavit, Ocwen indicated that some or all of the existing documents Ms. Johnson had previously submitted would not possibly become outdated until July 1, 2016. *See* Dkt. No. 18-1 at 171 of 206.

The undersigned concludes that a question of material fact exists as to the completeness of Ms. Johnson's application.

Still, Defendants maintain in their brief that they are entitled to summary judgment on Ms. Johnson's RESPA claims because, even if Ms. Johnson's application were complete, Ms. Johnson has not established the requisite damages element of her RESPA claim. Defendants argue that "Plaintiff has no evidence of any damages" resulting from Defendants alleged RESPA violations. Dkt. No. 17 ¶ 27; *see also id.* ¶ 28 (incorporating by reference the section of Defendants' brief containing ¶ 27).

In Paragraph 27 of their brief, Defendants specifically argue that Ms. Johnson has not suffered the requisite damages because (1) no foreclosure has occurred and (2) Ms. Johnson owes more on the Loan than the damages that she could recover on her RESPA claims. *See* Dkt. No. 17 ¶ 27.

Defendants' second argument, which concerns their affirmative defense of set-off, off-set, and recapture, *see* Dkt. No. 11 at 8, fails because Defendants, by merely citing to evidence establishing how much Ms. Johnson owes on the Loan, *see* Dkt. No.

17 ¶ 27, have not met the beyond-peradventure burden for summary judgment on an affirmative defense.

But the undersigned agrees with Defendants' first argument, because, although foreclosure is not the only way a RESPA plaintiff may establish damages, Ms. Johnson has pointed to no evidence in the record indicating that she suffered actual damages that were caused by Defendants' alleged violations.

RESPA provides that "whoever fails to comply with any provision of RESPA shall be liable to the borrower for each such failure in the following amounts: ... (A) any actual damages to the borrower ... and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f). "To recover, a claimant must show that the actual damages resulted from a RESPA violation." *Whittier v. Ocwen Loan Servicing, LLC*, 594 F. App'x 833, 836 (5th Cir. 2014).

In her response to Defendants' MSJ, Ms. Johnson argues that she has suffered mental anguish as a result of Defendants' actions. In so arguing, Ms. Johnson cites to her attached Declaration, which explains that

> I have suffered severe mental anguish and emotional distress due to Ocwen's actions and omissions described above. I suffered heightened stress levels, sleepless nights, hair loss, headaches, anxiety, major depression, irritation because of no credit ability, weight loss, loss of appetite, irritable bowel syndrome, migraine headaches, fatigue, feelings of helplessness, feelings of hopelessness, unusual fighting with my spouse over Ocwen, flare-ups of my Fibromyalgia, and inability to concentrate during that time. I became consumed with worry, frustration, and grief. I experienced period of exhaustion. I was embarrassed, overwhelmed, and paranoid, and had suicidal thoughts.

Dkt. No. 26-1 ¶ 14.

The undersigned notes that courts are divided as to whether mental anguish damages are recoverable under RESPA. *Compare Geoffrion v. Nationstar Mortg. L.L.C.*, 182 F. Supp. 3d 648, 665 (E.D. Tex. 2016) ("[T]he Court finds that mental anguish damages are included within RESPA's actual damages provision."), *with Steele v. Quantum Servicing Corp.*, No. 3:12-cv-2897-L, 2013 WL 3196544, at *8 (N.D. Tex. June 25, 2013) ("[M]ental anguish damages are not recoverable under RESPA and do not satisfy the requirement that plaintiffs must have suffered actual damages.").

But, regardless of the Court's position on whether mental anguish damages are recoverable under RESPA, Ms. Johnson does not allege or point to evidence establishing that her mental anguish was the result of Defendants' alleged failure to provide notice of application denial, under Section 1024.41(d), and premature filing for foreclosure, under Section 1024.41(g).

In her response to the MSJ, Ms. Johnson explains that she suffered the mental anguish she describes "because Plaintiff was constantly having to search for and send in numerous documents, often the same documents more than once, only to have Ocwen tell Plaintiff that she needed to do it all over again." Dkt. No. 25 ¶ 82. But, when interpreted in Ms. Johnson's favor, the evidence shows that Ms. Johnson was searching for and sending documents to complete her application before Ocwen filed for foreclosure on April 22, 2016 and that, prior to April 22, 2016, loan modification discussions were ongoing and Ms. Johnson's application had not been denied. Thus, Ms. Johnson has not alleged or identified evidence showing that the mental anguish

of which she complains was caused by Defendants' alleged RESPA violations.

Ms. Johnson also alleges that she suffered financial losses from expenses of preparing the loss mitigation documents and from her loss of time and inconvenience, explaining that she spent "approximately 130 hours gathering documents and information and attempting to submit and resubmit loss mitigation/loan modification applications." *See* Dkt. No. 26-1 ¶ 15. But these arguments fail for the same reason – these alleged losses were the result of preparing a loss mitigation application and not the result of Defendants' filing for foreclosure or failing to provide proper notice of her application denial.

Although Ms. Johnson argues that she may recover litigation costs under RESPA, Ms. Johnson's attorneys fees incurred in defending against foreclosure and filing the instant lawsuit, alone, are insufficient to sustain her claims. Under RESPA, a plaintiff may recover, "in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances." 12 U.S.C. § 2605(f)(3). Attorneys fees are recoverable only in addition to the actual damages a RESPA plaintiff may recover, and is required to show, in bringing a RESPA claim. *See id.* And, here, Ms. Johnson has not established the requisite actual damages.

In her response, Ms. Johnson also alleges that, "[a]s shown in this lawsuit, as well as based on the public record, Ocwen has engaged in a pattern and practice of violating RESPA. Therefore, Plaintiff is entitled to recover $2,000.00 in statutory damages." Dkt. No. 25 ¶ 56. But the sole evidence that Ms. Johnson provides to

substantiate her claim to statutory damages is a citation to prepared remarks of the Director of the Consumer Financial Protection Bureau. And, in opposing the MSJ, Ms. Johnson was required to do more than cite to a secondary source to create a genuine issue of material fact.

The undersigned concludes that Defendants are entitled to summary judgment on Ms. Johnson's RESPA claims under Sections 1024.41(d) and 1024.41(g) because, although a genuine issue of material fact exists as to whether Ms. Johnson submitted a complete loss mitigation application, Ms. Johnson has not set forth specific facts showing that a genuine issue of material fact exists as to her actual damages.

IV.   The Court should deny Defendants' MSJ on Ms. Johnson's TDCA claims under <u>Section 392.301(a)(8).</u>

Section 392.301(a)(8) of the TDCA prohibits a debt collector from using "threats, coercion, or attempts to coerce" that involve "threatening to take an action prohibited by law." TEX. FIN. CODE § 392.301(a)(8).

Ms. Johnson claims that Defendants violated Section 392.301(a)(8) by threatening to foreclose before RESPA permitted them to do so under Section 1024.41(g).

Defendants argue that they are entitled to summary judgment on Ms. Johnson's Section 392.301(a)(8) claim because Ms. Johnson "never submitted a complete loss mitigation application such that RESPA became applicable," so threatening to initiate foreclosure was not "prohibited by law" under Section 392.301(a)(8). Dkt. No. 17 ¶ 34. In the alternative, Defendants maintain that Ms. Johnson has no evidence of damages

to sustain her Section 392.301(a)(8) claim. *See id.*

The undersigned notes that, for the first time in their reply, Defendants raise an issue of whether Wells Fargo is vicariously liable for Ocwen's TDCA violations. *See* Dkt. No. 28 at 7 n.2. But a court generally will not consider arguments raised for the first time in a reply brief. *See Cavazos v. JP Morgan Chase Bank, N.A.*, 388 F. App'x 398, 399 (5th Cir. 2010) ("[a]rguments raised for the first time in a reply brief, even by pro se litigants ... are waived" (quoting *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005)) (omission in original)); *Digital Generation, Inc. v. Boring*, 869 F. Supp. 2d 761, 771 (N.D. Tex. 2012) (declining to consider new arguments raised in a reply brief). The undersigned thus does not consider Defendants' argument as to Wells Fargo's vicarious liability.

The undersigned concludes that Defendants' MSJ should be denied as to Ms. Johnson's Section 392.301(a)(8) claim because (1) Ms. Johnson has established a genuine issue as to whether she submitted a complete loss mitigation application and (2) Defendants did not meet their initial burden in moving for summary judgment on Ms. Johnson's Section 392.301(a)(8) claim based on Ms. Johnson's lack of actual damages.

First, as the undersigned explains above as to Ms. Johnson's RESPA claims, a genuine issue of fact exists as to whether Ms. Johnson submitted a complete loss mitigation application.

Second, Defendants did not meet their initial burden in moving for summary judgment based on the damages element of Ms. Johnson's Section 392.301(a)(8). In

*Celotex v. Catrett*, 477 U.S. 317 (1986), the United States Supreme Court made clear that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact" – even if the moving party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323-24 (citation omitted).

To meet its initial burden, "[i]t is not enough for the moving party to make a conclusory statement that the other party has no evidence to prove his case." *Ashe v. Corley*, 992 F.2d 540, 543 (5th Cir. 1993) (citing *Celotex*, 477 U.S. at 328). Rather, as the Eleventh Circuit explains in what appears to be a seminal case on this issue and one that the Fifth Circuit describes as "identical" to the law in this Circuit,

> [t]he moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex*, it is never enough simply to state that the non-moving party cannot meet its burden at trial.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *accord Russ v. International Paper Co.*, 943 F.2d 589, 591-92 (5th Cir. 1991) ("Simply filing a

summary judgment motion does not immediately compel the party opposing the motion to come forward with evidence demonstrating material issues of fact as to every element of its case. That this is a common misinterpretation of the Supreme Court decisions is amply demonstrated in the thorough opinion of Judge [Emmett] Cox, relying to some extent on 5th Circuit cases, in *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The law of the Fifth Circuit and the Eleventh Circuit is identical in this regard."); *see also Fano v. O'Neill*, 806 F.2d 1262, 1266 (5th Cir. 1987) (quoting *Celotex*, 106 S.Ct. at 2555 (Brennan, J., dissenting) ("Plainly, a conclusory assertion that the nonmoving party has no evidence is insufficient. ... Rather, as the [majority] confirms, a party who moves for summary judgment on the ground that the nonmoving party has no evidence must affirmatively show the absence of evidence in the record.")).

And, although a moving party may meet its initial burden of showing that there is no genuine issue for trial by pointing out "the absence of evidence to support the nonmoving party's case," *Duffy v. Leading Edge Products*, 44 F.3d 308, 312 (5th Cir. 1995) (internal quotations and citation omitted), "[t]here is a difference between pointing out that there is no evidence by making a conclusory assertion and pointing out there is no evidence by discussing what the record shows. ... [T]he moving party must show that the evidence currently in the record does not show a genuine issue of material fact." *Seastrunk v. Darwell Integrated Tech., Inc.*, No. 3:05-cv-531-BF, 2008 WL 190316, at *2 (N.D. Tex. Jan. 22, 2008); *accord Davis v. Ascension Health and Sedgwick Claims Management Services, Inc.*, No. A-09-ca-885 LY, 2011 WL 13175633,

at *9 (W.D. Tex. Jan. 26, 2011), *accepted by* 2011 WL 13175783 (W.D. Tex. March 15, 2011).

Based on these principles, in *Lopez v. City of Dallas, Texas*, now-Chief Judge Barbara M. G. Lynn found that the moving party failed to meet its initial burden where it "assert[ed] in its summary judgment brief that (1) there is no evidence that any particular land was offered for sale or lease for construction of residential dwellings, (2) Plaintiffs recognize that construction of homes in much of the area is improbable, [and] (3) at most, the City made some portions of land unavailable for some future development of residential housing units." *Lopez v. City of Dallas, Tex.*, No. 3:03-cv-2223-M, 2006 WL 1450520, at *7-*8 (N.D. Tex. May 24, 2006). She reasoned that, by making these assertions "without any references to evidence, interrogatories, or portions of depositions," the moving party "ma[de] only conclusory assertions that Plaintiffs [could not] prove their case" and therefore "[could not] prevail on its Motion for Summary Judgment directed to this claim." *Lopez*, 2006 WL 1450520, at *8; *accord Seastrunk*, 2008 WL 190316, at *2 (N.D. Tex. Jan. 22, 2008) ("It is not sufficient to merely list the elements of the claim and state that there is no evidence to support the elements. This is the type of conclusory assertion the court has said would not satisfy the summary judgment burden.").

Here, Ms. Johnson's claims under RESPA and the TDCA both require an element of actual damages. To satisfy their initial burden in moving for summary judgment based on Ms. Johnson's lack of actual damages, Defendants were required, for each claim under both statutes, to point out the evidence in the record

demonstrating an absence of genuine issue of material fact as to damages.

In the part of their MSJ addressing Ms. Johnson's Section 392.301(a)(8) claim, Defendants plainly assert that "Plaintiff has no ... evidence of damages." Dkt. No. 17 ¶ 34. And, in stating such a conclusion, Defendants neither cite to supporting evidence in the record nor cross-reference a portion of their MSJ brief where supporting evidence may be found. Defendants did not meet their initial burden in moving for summary judgment as to the damages element of Ms. Johnson's Section 392.301(a)(8) claim.

The undersigned concludes that Defendants should be denied summary judgment on Ms. Johnson's Section 392.301(a)(8) claim because an issue of material fact exists as to whether Ms. Johnson completed a loss mitigation application and because Defendants failed to meet their initial burden in moving for summary judgment on Ms. Johnson's Section 392.301(a)(8) claim on the basis of Ms. Johnson's actual damages.

V.  The Court should grant Defendants' MSJ on Ms. Johnson's TDCA claim under Section 392.304(a)(19).

Section 392.304(a) of the TDCA prohibits a debt collector from using "a fraudulent, deceptive, or misleading representation that employs" certain practices outlined in its subsections. TEX. FIN. CODE § 392.304(a). Section 392.304(a)(19) is a catch-all provision that covers all false representations or deceptive means that a party might use to collect a debt or obtain information regarding a consumer. *See* TEX. FIN. CODE § 392.304(a)(19); *Sanghera v. Wells Fargo Bank, N.A.*, No. 3:10-CV-2414-B, 2012 WL 555155, at *8 (N.D. Tex. Feb. 21, 2012). For a TDCA misrepresentation claim

under Section 392.304(a)(19) to stand, a defendant must have made "an 'affirmative statement' that was false or misleading." *Chavez v. Wells Fargo Bank, N.A.*, 578 F. App'x 345, 348 (5th Cir. 2014) (citing *Verdin v. Fed. Nat'l Mortg. Ass'n*, 540 F. App'x 253, 257 (5th Cir. 2013)).

Ms. Johnson alleges that Defendants violated Section 392.304(a)(19) by "encourag[ing] Plaintiff that loss mitigation options were available, while simultaneously representing that Defendants were proceeding with foreclosure actions," or, in other words, by "dual tracking" the Loan. *See* Dkt. No. 1-5 ¶ 26.

The undersigned notes that Ms. Johnson's State Court Petition ("Petition") and response to the MSJ are unclear as to whether she alleges Defendants' dual tracking violated Section 392.304(a)(8), Section 392.304(a)(19), or both. But it is of little consequence to the outcome of Defendants' MSJ, and the undersigned interprets Ms. Johnson's Petition to make a dual tracking claim under both TDCA provisions.

Defendants maintain that they are entitled to summary judgment on Ms. Johnson's Section 392.304(a)(19) dual tracking claim because they had not yet filed for foreclosure when they encouraged Ms. Johnson to file for a modification. The undersigned agrees and concludes that Defendants are entitled to summary judgment on Ms. Johnson's Section 392.304(a)(19) claim because in their loan modification discussions with Ms. Johnson prior to filing for foreclosure, Defendants made no affirmative misrepresentations.

To prevail on a claim under Section 392.304(a)(19), Ms. Johnson would need to allege that Defendants made "an 'affirmative statement' that was false or misleading."

*Chavez*, 578 F. App'x at 348 (granting a motion to dismiss a Section 392.304(a)(19) claim where, even assuming that Wells Fargo told the plaintiff "not to worry" about whether he qualified, the plaintiff "did not allege that Wells Fargo ever affirmatively represented that he qualified for the modification program"); *see also Thompson v. Bank of America, N.A.*, 13 F. Supp. 3d 636, 657-58 (N.D. Tex. 2014) ("[H]aving discussions about loan modifications does not constitute 'deceptive means' to collect a debt."), *aff'd*, 783 F.3d 1022 (5th Cir. 2015).

Here, Ms. Johnson has not established that Defendants made affirmative misrepresentations in their loan modification discussions with Ms. Johnson. Defendants did not affirmatively promise Ms. Johnson that the Loan would be modified, and instead made clear in their April 19 letter, and others prior, that "not all borrowers will qualify for a loan modification or loss mitigation option." Dkt. No. 26-9 at 3 of 6. Despite providing a document due date of May 6, 2016, Defendants indicated that, until they considered Ms. Johnson's application to be complete, they may pursue foreclosure. *See id.* at 4 of 6. And it was not until April 22, 2016 that Defendants filed their application for foreclosure.

The undersigned thus concludes that the Court should grant Defendants' MSJ with respect to Ms. Johnson's claim under Section 392.304(a)(19) of the TDCA.

VI.  The Court should grant Defendants' MSJ on Ms. Johnson's TDCA Section 392.304(a)(8) claims that are based on Defendants' requesting conflicting amounts due on the Loan and Defendants' dual tracking of the Loan.

Section 392.304(a)(8) prohibits "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial

or governmental proceeding." TEX. FIN. CODE § 392.304(a)(8).

In her Petition, Ms. Johnson alleges that Defendants misrepresented the character and extent of the Loan in violation of Section 392.304(a)(8) "by requesting wildly different amounts that were purportedly due and owing on the loan," and (2) by "encourag[ing] Plaintiff that loss mitigation options were available, while simultaneously representing that Defendants were proceeding with foreclosure actions" (by "dual tracking" the Loan). Dkt. 1-5 ¶ 26. The undersigned again notes that it is unclear whether Ms. Johnson's second allegation relates to her claim under Section 392.304(a)(8), 392.304(a)(19), or both. But it is of no consequence here.

In her response to Defendants' MSJ, Ms. Johnson asserts a claim under the second clause of Section 392.304(a)(8), arguing that "Ocwen violated Section 392.304(a)(8) in its lawsuit seeking an expedited order of foreclosure when Ocwen represented, 'Before this application was filed, any other action required to initiate foreclosure proceeding by Texas law or the loan agreement or lien sought to be foreclosed was performed.'" Dkt. No. 25 ¶ 73 (quoting Ocwen's application for foreclosure).

But the undersigned has reviewed Ms. Johnson's Petition and finds no mention of a Section 392.304(a)(8) claim that is based on Defendants' alleged misrepresentation to the court in its foreclosure case. And Ms. Johnson cannot amend her Petition by adding additional claims in response to a motion for summary judgment. If Ms. Johnson wishes to amend her Petition to add additional claims against Defendants under Section 392.304(a)(8), Ms. Johnson must seek leave of court by filing a proper

motion for that purpose. Because she has not yet done so, the undersigned considers whether summary judgment should be granted on Ms. Johnson's Section 392.304(a)(8) claims only insofar as they allege Defendants (1) requested varying amounts due on the Loan and (2) were dual tracking the Loan. Defendants argue that they are entitled to summary judgment on both of Ms. Johnson's claims arising under Section 392.304(a)(8), and the undersigned agrees.

First, Defendants are entitled to summary judgment on Ms. Johnson's Section 392.304(a)(8) claim that Defendants misrepresented the character and extent of the Loan by requesting different amounts that were purportedly due on the Loan.

In their MSJ brief, Defendants argue that they are entitled to summary judgment on Ms. Johnson's Section 392.304(a)(8) claim insofar as it is based on conflicting Loan amounts because (1) the amounts Defendants sought were consistent with what Ms. Johnson owed, *see* Dkt. No. 17 ¶ 31; and (2) even if the amounts requested did vary, "Plaintiff can point to no damages that were caused by any alleged varying amounts listed on statements and other communications," *id.* ¶ 32.

But, in her response, Ms. Johnson fails to address – and points to no evidence in the record to dispute – Defendants' argument that Defendants did not misrepresent the amounts they sought to collect on the Loan.

And, although Ms. Johnson indicates in her Declaration attached to her response that she perceived the amounts due to be conflicting, the evidence cited by Defendants and provided by both parties – viewing all evidence and facts and drawing all reasonable inferences in the light most favorable to Ms. Johnson and resolving all

33

disputed factual controversies in her favor – suggests that the amounts Defendants requested, although varying, were not inaccurate. The numerous letters and mortgage statements in the record establish that Ocwen regularly provided Ms. Johnson with two amounts due on the Loan: a lesser amount due to reinstate the Loan, and a greater, accelerated amount due to pay off the Loan in full. And, as Defendants point out, differences between the reinstatement amount and the accelerated amount, and increases in those amounts reflecting newly accrued charges and fees, do not constitute misrepresentations.

Second, Defendants are entitled to summary judgment on Ms. Johnson's Section 392.304(a)(8) claim insofar as it is based upon Defendants' seeking an order of foreclosure while Ms. Johnson's loan modification was under review.

In her response to the MSJ, Ms. Johnson argues that "in its April 19, 2016 letter, Ocwen misrepresented that Plaintiff needed to submit three additional documents to complete her loss mitigation application," Dkt. No. 25 ¶ 70, and that, in the same April 19 letter, Ocwen made misleading affirmative representations to Ms. Johnson "that she could submit loss mitigation/loan modification documents by May 6, 2016, only to have Ocwen turn around and file a lawsuit seeking an expedited order of Foreclosure on April 22, 2016," *id.* ¶ 72.

But "discussions regarding loan modification or a trial payment plan are not representations, or misrepresentations, of the amount or character of the debt" under Section 392.304(a)(8). *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) (quoting *Watson v. Citimortgage, Inc.*, No 4:10-cv-707, 2012 WL 381205, at *7

(E.D. Tex. Feb. 3, 2012)); *see also Chavez*, 578 F. App'x at 348 (affirming dismissal of the plaintiff's 392.304(a)(8) claim where the defendant allegedly misled plaintiff to believe that he qualified for and would be approved for a loan modification). And, as discussed above, Ocwen made no promises that it would modify Ms. Johnson's Loan or forego foreclosure.

The undersigned thus concludes that no genuine issue of material fact exists as to whether Ocwen misrepresented the character and extent of the Loan to Ms. Johnson – either by requesting conflicting amounts or by dual tracking the Loan – and that Defendants are entitled to judgment as a matter of law on Ms. Johnson's Section 392.304(a)(8) claims for misrepresenting the character or extent of a consumer debt.

### Recommendation

For the reasons discussed above, the Court should overrule Defendants' Objections to, and Motion to Strike, Plaintiff's Evidence in Support of her Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 29] and grant Defendants' Motion for Summary Judgment [Dkt. No. 16] in part. Specifically, the Court should grant Defendants' Motion for Summary Judgment on Ms. Johnson's claims under the Real Estate Settlement Procedures Act and the Texas Debt Collection Act based on Texas Finance Code §§ 392.304(a)(8) and 392.304(a)(19) and should deny on Ms. Johnson's claim under the Texas Debt Collection Act based on Texas Finance Code § 392.301(a)(8).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these

findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 16, 2017

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE