IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TERESA ANN JOHNSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:16-cv-2213-M |
| | § | |
| OCWEN LOAN SERVICING LLC, | § | |
| AND WELLS FARGO BANK, | § | |
| NATIONAL ASSOCIATION, AS | § | |
| TRUSTEE FOR PARK PLACE | § | |
| SECURITIES, INC., ASSET-BACKED | § | |
| PASS-THROUGH CERTIFICATES, | § | |
| SERIES 2005-WLLI, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## <u>UNITED STATES MAGISTRATE JUDGE</u>

Defendants Ocwen Loan Servicing LLC ("Ocwen") and Wells Fargo Bank, National Association ("Wells Fargo"), as Trustee for Park Place Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-WLLI (together, "Defendants") filed a Motion for Summary Judgment [Dkt. No. 16] (the "MSJ"). Chief Judge Barbara M. G. Lynn referred the MSJ to the undersigned United States magistrate judge for recommendation, *see* Dkt. No. 31, and the undersigned issued a Findings, Conclusions, and Recommendation dated November 16, 2017, *see* Dkt. No. 34.

The undersigned previously recommended that the Court grant the MSJ on Plaintiff Teresa Ann Johnson's claims under the Real Estate Settlement Procedures Act ("RESPA") and under the Texas Debt Collection Act ("TDCA"), Texas Finance Code §§ 392.304(a)(8) and 392.304(a)(19). *See id.* at 35. As to Ms. Johnson's remaining TDCA

claim under Texas Finance Code § 392.301(a)(8), the undersigned concluded that Defendants had not met their initial burden in moving for summary judgment and recommended that the court deny summary judgment on Ms. Johnson's Section 392.301(a)(8) claim. *See id.* at 29.

Both parties filed objections to the Findings, Conclusions, and Recommendation, *see* Dkt. Nos. 37, 38, and, after conducting an independent review, the Court entered its Order Accepting in Part and Rejecting in Part Findings, Conclusions, and Recommendation of the United States Magistrate Judge, *see* Dkt. No. 41.

The Court agreed that the MSJ should be granted as to Ms. Johnson's RESPA claims and as to her TDCA claims under Sections 392.304(a)(8) and (19). *See id.* And those claims have been dismissed. *See* Dkt. No. 42. But the Court concluded that Defendants had satisfied their initial burden in moving for summary judgment on Ms. Johnson's TDCA claim under Section 392.301(a)(8) based on Defendants' argument as to Ms. Johnson's lack of actual damages, and the Court re-referred to the undersigned Defendants' MSJ on Ms. Johnson's Section 392.301(a)(8) claim. *See* Dkt. No. 41.

The undersigned now concludes that Defendants' Motion for Summary Judgment [Dkt. No. 16] on Ms. Johnson's TDCA claim under Texas Finance Code § 392.301(a)(8) should be granted.

## Background

Defendants moved for summary judgment on all of Ms. Johnson's claims against them under RESPA and the TDCA. Because the Court has entered judgment

2

dismissing Ms. Johnson's RESPA and TDCA claims under Sections 392.304(a)(8) and (19), the undersigned now considers whether Defendants are entitled to summary judgment on Ms. Johnson's remaining TDCA claim under Section 392.301(a)(8).

To determine the undisputed facts in this case, the undersigned has considered the evidence submitted by the parties to the extent that it is proper for consideration on this motion, as discussed below. These documents establish the following undisputed facts, which the undersigned identified in the Findings, Conclusions, and Recommendation dated November 16, 2017, but recounts here.

Ms. Johnson owns a home located at 9611 Private Road 3826, Quinlan, Texas 75474 (the "Property").

On December 9, 2004, Ms. Johnson obtained a $160,000 loan (the "Loan") by signing a Texas Home Equity Adjustable Rate Note (the "Note") and by, together with her husband, Robert Lukowicz, signing a Texas Home Equity Security Interest (First Lien) ("Security Interest"), which granted her lender a lien on the Property.

Ocwen became the servicer of the Loan on November 1, 2011.

By February 2014, Ms. Johnson was seven months behind on her payments on the Loan.

In December 2014, Ms. Johnson's husband, Mr. Lukowicz, lost his job. Ms. Johnson was still seven months behind on her loan payments.

Ms. Johnson made loan payments in January 2015 through July 2015 but did not bring her loan payments up to date, and she remained seven months behind.

In July 2015, Ms. Johnson requested, and Ocwen provided, a loan modification

3

application.

In correspondence dated July 24, 2015, Ocwen notified Ms. Johnson of her default. The letter indicated that failure to bring her account current could result in Ocwen's election to foreclose on the Property and that, on acceleration of the Loan, Ms. Johnson's total obligation would immediately become due.

Ms. Johnson attempted to make a loan payment for August 2015, but Ocwen did not accept Ms. Johnson's attempted payment.

On September 16, 2015, Ocwen sent Ms. Johnson a letter indicating that it had initiated foreclosure on the Property but that Ms. Johnson could avoid foreclosure if she completed and returned to Ocwen a loan modification application.

Ms. Johnson's September Mortgage Account Statement indicated an accelerated amount due of $154,233.33 and a reinstatement amount due of $15,969.92.

Ms. Johnson's subsequent Mortgage Account Statements also provided an accelerated amount due and a reinstatement amount due, both amounts reflecting added fees and charges accrued since previous statements.

On December 16, 2015, Ocwen sent Ms. Johnson a Delinquency Notice indicating that Ms. Johnson was behind on her mortgage payments.

Between August 2015 and February 2016, Ms. Johnson submitted, on numerous occasions, various loan modification application documents to Ocwen. Each time, Ocwen responded by indicating that Ms. Johnson's application remained incomplete and by requesting additional materials.

On March 31, 2016, Plaintiff faxed additional application documents to Ocwen.

In a letter dated April 4, 2016, Ocwen acknowledged receipt of Ms. Johnson's March 31 correspondence.

In a letter dated April 5, 2016, Ocwen notified Ms. Johnson that her Application remained incomplete due to three missing documents: (1) Borrower Two's two most recent consecutive pay stubs with year-to-date income, for each job he maintained; (2) a signed Hardship Affidavit, because the one previously received was not signed; and (3) a 4506-T form, because the one previously received was not legible.

The April 5 letter provided a April 22, 2016 deadline for Ms. Johnson to submit the three missing documents.

On April 12, 2016, Ms. Johnson faxed Ocwen (1) a letter indicating that Mr. Lukowicz was employed by NUCOR building systems; (2) Mr. Lukowicz's three most recent pay stubs from NUCOR building systems; (3) bank statements for Mr. Lukowicz spanning December 3, 2015, through April 3, 2016; (4) bank statements for QMHV Inc. spanning January 1, 2016, through March 31, 2016; (5) a 4506-T form signed by both Ms. Johnson and Mr. Lukowicz; and (6) a Hardship Affidavit, signed on each page by Ms. Johnson and Mr. Lukowicz.

On April 19, 2016, Ocwen informed Ms. Johnson that further documentation was necessary and that the same three documents mentioned in its April 5 letter remained outstanding for the same reasons as before: (1) Borrower Two's paystubs, because they had not yet been received; (2) a signed Hardship Affidavit, because the one received was not signed; and (3) a 4506-T form, because the one previously received was not legible.

5

The April 19 letter provided a May 6, 2016 deadline for Ms. Johnson to submit the requested materials.

On April 22, 2016, Ocwen filed a Petition in the 196th District Court of Hunt County, Texas, seeking an expedited Order for Foreclosure.

In a letter dated May 2, 2016, Ocwen informed Ms. Johnson that her application remained incomplete because Borrower Two's paystubs had still not been received.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to

6

meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)). The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if both parties have introduced evidence showing that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma*

7

*Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted).

"Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

If, "[a]fter the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (citation omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in

any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

I. The Court should grant Defendants' MSJ on Ms. Johnson's TDCA claim under Section 392.301(a)(8).

Ms. Johnson claims that Ocwen violated Section 392.301(a)(8) by threatening to initiate and advance foreclosure in its April 19, 2016 letter when RESPA, Ms. Johnson alleges, prohibited Ocwen from doing so. *See* Dkt. No. 25 ¶ 78.

Defendants maintain that they are entitled to summary judgment on Ms. Johnson's Section 392.301(a)(8) claim because (1) "Plaintiff never submitted a complete loss mitigation application such that RESPA became applicable," and (2) Ms. Johnson has no evidence of damages that were caused by Ocwen's threatening foreclosure. The undersigned previously concluded that a genuine issue of material fact exists regarding whether defendants submitted a complete loss mitigation application, and the Court accepted that conclusion in its recent order. The undersigned now considers only whether a genuine issue of material fact exists as to Ms. Johnson's actual damages.

9

Because Ms. Johnson has not pointed to evidence in the record to show that she suffered actual damages that were caused by Defendants' alleged Section 392.301(a)(8) violations, the undersigned concludes that no genuine dispute of material fact exists as to her damages.

Section 392.301(a)(8) of the TDCA provides that, "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ ... threatening to take an action prohibited by law." TEX FIN. CODE § 392.301(a)(8).

A plaintiff making a claim under Section 392.301(a)(8) "may sue for: (1) injunctive relief to prevent or restrain a violation ... and (2) actual damages sustained as a result of a violation." TEX. FIN. CODE § 392.403(a). Texas courts have held that in order to maintain an action for actual damages under the TDCA, a plaintiff must plead and prove actual damages. *See Jackson Law Office, P.C. v. Chappell*, 37 S.W.3d 15, 31 (Tex. App. - Tyler 2000, pet. denied) ("Because [the plaintiff] did not prove that any actual damages were caused by [the defendant]'s debt collection practices, she did not successfully maintain an action under the Act."); *see also Lopez-Garcia v. Deutsche Bank Nat'l Trust Co. for Argent Sec. Inc.*, 2017 WL 2869430, at *4 (W.D. Tex. July 5, 2017) (granting summary judgment on the plaintiff's TDCA claim because "plaintiff ... has presented no evidence of the actual damages upon which recovery under the TDCA must be based"); *Wood v. CitiMortgage, Inc.*, No. 4:11-cv-139, 2012 WL 642791, at *4 (E.D. Tex. Feb. 28, 2012) (granting defendants' motion for summary judgment on plaintiffs' TDCA claims where "there is no evidence of any damages or that they were caused by any violation of these statutes"); *Naranjo v. Universal Sur. of Am.*, 679 F.

10

Supp. 2d 787, 801 (S.D. Tex. 2010) (noting that "Texas courts have stated that a plaintiff who cannot prove actual damages cannot 'successfully maintain an action under the [Texas Debt Collection] Act.'"(quoting *Jackson Law Office, P.C.*, 37 S.W.3d at 30-31)).

In her response to Defendants' MSJ, Ms. Johnson argues that "the summary judgment record supports that Plaintiff has sustained damages and injuries due to Ocwen's TDCA violations," Dkt. No. 25 ¶ 85, and describes three types of damages she allegedly suffered and for which, she argues, she is entitled to recover: (1) mental anguish, *see* Dkt. No. 25 ¶¶ 80, 82, (2) financial injury due to "loss of time at work and inconvenience," and "inconvenience and expenses of copying and faxing the loss mitigation application and supporting documents," *id.* ¶ 83, and (3) her attorneys' fees in defending against Ocwen's Lawsuit for Expedited Order of Foreclosure and in bringing this action, *see id.* ¶¶ 81, 84.

First, Ms. Johnson argues that "[a]ctual damages recoverable under the TDCA include damages for mental anguish," *id.* ¶ 80, and that she "has suffered severe mental anguish and emotion distress due to [Defendants'] actions," *id.* ¶ 82.

In their reply, Defendants contend that Ms. Johnson has no evidence that her mental anguish damages were caused specifically by Defendants' Section 392.301(a)(8) violation.

In arguing that she has suffered mental anguish, Ms. Johnson cites to her attached Declaration, which states:

11

> I have suffered severe mental anguish and emotional distress due to Ocwen's actions and omissions described above. I suffered heightened stress levels, sleepless nights, hair loss, headaches, anxiety, major depression, irritation because of no credit ability, weight loss, loss of appetite, irritable bowel syndrome, migraine headaches, fatigue, feelings of helplessness, feelings of hopelessness, unusual fighting with my spouse over Ocwen, flare-ups of my Fibromyalgia, and inability to concentrate during that time. I became consumed with worry, frustration, and grief. I experienced period of exhaustion. I was embarrassed, overwhelmed, and paranoid, and had suicidal thoughts.

Dkt. No. 26-1 ¶ 14.

And, in her response to the MSJ, Ms. Johnson states that "Plaintiff has suffered severe mental anguish and emotion distress due to the above[-]discussed actions." Dkt. No. 25 ¶ 82. Ms. Johnson explains that she suffered the symptoms described in her Declaration "because Plaintiff was constantly having to search for and send in numerous documents, often the same documents more than once, only to have Ocwen tell Plaintiff that she needed to do it all over again." Dkt. No. 25 ¶ 82; *see also* Dkt. No. 26-1 ¶ 14.

But, when interpreted in Ms. Johnson's favor, the evidence shows that Ms. Johnson was searching for and sending documents to complete her application before Ocwen allegedly threatened, on April 19, 2016, to file foreclosure – the act that Ms. Johnson identifies as the basis of her Section 392.301(a)(8) claim. Ms. Johnson has not alleged or identified evidence showing that the mental anguish of which she complains was caused by Defendants' alleged Section 392.301(a)(8) violation.

Second, Ms. Johnson alleges that she suffered financial losses from expenses of preparing the loss mitigation documents and from her loss of time and inconvenience,

12

explaining that she spent "approximately 130 hours gathering documents and information and attempting to submit and resubmit loss mitigation/loan modification applications." Dkt. No. 26-1 ¶ 15. But these arguments fail for the same reason as her mental anguish damages – Ms. Johnson's response to the MSJ provides that these alleged losses were the result of preparing a loss mitigation application and not the result of Defendants' threatening to file for foreclosure allegedly in violation of RESPA. And Ms. Johnson does not point to evidence in the record showing otherwise.

Third, Ms. Johnson names her litigation costs as evidence of damages. But Ms. Johnson's attorney's fees incurred in defending against the foreclosure suit and filing the instant lawsuit, alone, are insufficient to sustain her Section 392.301(a)(8) claim. The TDCA provides that "[a] person who successfully maintains" a TDCA action is entitled to attorney's fees. TEX. FIN. CODE § 392.403(b). TDCA plaintiff seeking actual damages may thus recover attorneys fees only in addition to those actual damages. And, here, Ms. Johnson has not shown the existence of a genuine issue as to whether she can establish the requisite actual damages.

Ms. Johnson further argues that her claimed TDCA damages need not be the sole result of Defendants' acts, citing to *Brown v. Oaklawn Bank*, 718 S.W. 678, 670 (Tex. 1986), for the proposition that she can recover "actual damages that are a 'reasonably foreseeable result of the wrongdoer's conduct.'" Dkt. No. 25 ¶ 79. She explains that another judge in this district has noted "that *Brown* suggests that the harm claimed must have been merely a 'reasonably foreseeable result' of alleged misconduct under the TDCA; it does not require that the harm be the sole result of a

13

defendant's acts." *Id.* (quoting *Clark v. Deutsche Bank Nat'l Tr. Co.*, No. 3:14-CV-3590-B, 2016 WL 931216, at *7 (N.D. Tex. Mar. 11, 2016), *appeal docketed*, No. 16-11806 (5th Cir. Dec. 23, 2016)).

In their reply, Defendants argue that applying a "reasonably foreseeable" standard to Ms. Johnson's claimed damages would not change the outcome here. Defendants note that, although the *Clark* court did consider the reasonably foreseeable standard that *Brown* articulates, the court dismissed the plaintiffs' TDCA claims for which the plaintiffs had not adequately pleaded their damages. And Defendants point to the similarity between the facts of *Clark* and those here. The *Clark* defendants, in moving to dismiss the plaintiffs' TDCA claims, argued that the plaintiffs did not "even draw a causal connection between the alleged TDCA violations and any alleged damages." 2016 WL 931216, at *6 (quoting the defendants' motion to dismiss). The plaintiffs responded "by reiterating that they 'have pleaded that they suffered attorneys' fees, credit damage, and mental anguish.'" *Id.* (quoting the plaintiffs' response). The *Clark* court concluded that, regardless of whether *Brown*'s "reasonably foreseeable" standard applied to TDCA damages, the plaintiffs had "drawn no causal connection between any of the [d]efendants' alleged misconduct under the TDCA and the harm [the plaintiffs] suffered." *Id.* at *7.

The parties' arguments and Ms. Johnson's alleged damages in this case are substantially similar to those presented in *Clark*, and the undersigned finds the court's ultimate conclusion in *Clark* persuasive. And here, in defending against the MSJ, Ms.

14

Johnson was required to do more than allege that her damages were caused, under a reasonably foreseeable standard or otherwise, by Defendants' TDCA violation. Ms. Johnson was required to point to evidence in the record establishing that causation. Even if the Court applied a reasonably foreseeable causation standard to Ms. Johnson's TDCA damages, Ms. Johnson has not offered evidence to show that the three types of damages she seeks, as explained above, were caused by Defendants' threatening to foreclose allegedly in violation of RESPA.

Because Ms. Johnson has not identified evidence demonstrating that Defendants' threatening to foreclose when RESPA allegedly prohibited Defendants from foreclosing caused her actual damages, the undersigned concludes that no genuine issue of material fact exists as to Ms. Johnson's actual damages and that Defendants are entitled to judgment on Ms. Johnson's TDCA claim under Section 392.301(a)(8) claim as a matter of law.

**Recommendation**

For the reasons discussed above, the Court should grant Defendants' Motion for Summary Judgment [Dkt. No. 16] on Ms. Johnson's claim under the Texas Debt Collection Act based on Texas Finance Code § 392.301(a)(8) and enter a final judgment in favor of Defendants Ocwen Loan Servicing LLC and Wells Fargo Bank, National Association, as Trustee for Park Place Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-WLLI, on Plaintiff Teresa Ann Johnson's claim under the Texas Debt Collection Act, Texas Finance Code § 392.301(a)(8).

A copy of these findings, conclusions, and recommendation shall be served on all

parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 10, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE